UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YOVANNY ONTIVEROS,<br><br>Defendant. | No. 2:18-cr-00175-TLN<br><br>**ORDER** |

This matter is before the Court on Defendant Yovanny Ontiveros's ("Defendant") Motion to Dismiss the Indictment. (ECF No. 52.) The Government filed an opposition. (ECF No. 55). Defendant filed a reply. (ECF No. 58.) For the reasons set forth below, Defendant's motion to dismiss is DENIED.

///
///
///
///
///
///
///
///

### I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant was born in Mexico and is a citizen of Mexico. (ECF No. 55 at 3.) In 1997, Defendant was the beneficiary of a Petition for Alien Status filed by his stepfather. (*Id.*) In 2002, Defendant was convicted of two felony counts of transportation and sale of methamphetamine in violation of California Health & Safety Code § 11379(a) ("§ 11379(a)"). (*Id.*) He was sentenced to five years in prison. (*Id.*)

Following Defendant's release from imprisonment, Defendant received a Notice of Intent to Issue a Final Administrative Removal Order under the Immigration and Nationality Act ("INA") § 238(b).[1] (ECF No. 52-2.) The Notice charged Defendant with being deportable as an aggravated felon for "illicit trafficking in a controlled substance" pursuant to 8 U.S.C. § 1101(a)(43)(B) based on Defendant's 2002 felony conviction. (*Id.*) A Final Administrative Removal Order was issued on January 27, 2005, and Defendant was removed to Mexico on February 25, 2005. (ECF No. 52-1.)

At some point after his 2005 removal, Defendant returned to the United States. (ECF No. 55 at 4.) Federal immigration authorities arrested Defendant on August 22, 2018. (*Id.*) On August 30, 2018, a grand jury returned a single-count indictment charging Defendant with being a deported alien found in the United States in violation of 8 U.S.C. § 1326. (ECF No. 12.) On September 6, 2018, Defendant was arraigned, entered a plea of not guilty, and demanded a jury trial. (ECF No. 14.) Defendant was released from custody on pretrial release conditions on December 14, 2018. On March 5, 2020, Defendant filed the instant motion to dismiss the indictment. (ECF No. 52.)

### II. STANDARD OF LAW

#### A. Motion to Dismiss Indictment

A pretrial motion may challenge an indictment by raising "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A

---

[1] The Court may take judicial notice of publicly available records. *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 990 (E.D. Cal. 2012) ("Courts routinely take judicial notice of publicly available records, including hearing transcripts, from other court proceedings.").

motion attacking a facially sufficient indictment may be brought prior to trial pursuant to Federal Rule of Criminal Procedure ("Rule") 12 "if it involves questions of law rather than fact." *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (quoting *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986)). "Although the court may make preliminary findings of fact necessary to decide the legal questions presented by the motion, the court may not 'invade the province of the ultimate finder of fact.'" *Id.* Hence, an issue raised in a Rule 12(b) motion to dismiss may be decided by a court without improperly invading the province of the jury "if [the issue being decided] is entirely segregable from the evidence to be presented at trial." *Id.* Generally, a defendant moving to dismiss an indictment bears the burden of demonstrating a factual basis for such a motion to dismiss. *See United States v. Ziskin*, 360 F.3d 934, 943 (9th Cir. 2003); *United States v. Lazarevich*, 147 F.3d 1061, 1065 (9th Cir. 1998).

B.     Collateral Attack on a Deportation

A defendant charged with illegal reentry has a Fifth Amendment right, codified at 8 U.S.C. § 1326(d) ("§ 1326(d)"), to collaterally attack his removal order because the removal order serves as a predicate element of his conviction. *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 755 (9th Cir. 2015). To succeed on this challenge, a defendant must demonstrate that: "(1) he has exhausted any administrative remedies that may have been available to seek relief from the order; (2) the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." *United States v. Ochoa*, 861 F.3d 1010, 1014–15 (9th Cir. 2017).

Under Ninth Circuit precedent, "if Defendant was not convicted of an offense that made him removable under the INA to begin with, he is excused from proving the first two requirements." *Id.* at 1015; *see United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006). To show fundamental unfairness, "the defendant bears the burden of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *United States v. Raya-Vaca*, 771 F.3d 1195, 1202 (9th Cir. 2014) (internal quotation marks and alterations omitted).

///

**III.     ANALYSIS**

Defendant argues the indictment should be dismissed because his 2005 removal was fundamentally unfair. (ECF No. 52 at 5.) More specifically, Defendant argues his 2002 felony conviction for selling methamphetamine in violation of § 11379(a) does not qualify as an aggravated felony for removal purposes because California's statutory definition of methamphetamine is broader than the federal definition. Put simply, Defendant argues California's definition of methamphetamine includes geometric and optical isomers while the federal definition includes only optical isomers. Defendant argues § 11379(a) is overbroad, his removal was invalid, and his due process rights were violated.

In opposition, the Government argues that although the federal and state definitions of methamphetamine appear to differ, Defendant cannot show a "realistic probability" that California would apply its statute more broadly than federal law because geometric isomers of methamphetamine do not exist.[2] (ECF No. 55 at 2) The Government therefore argues § 11379(a) is not overbroad, Defendant's § 11379(a) conviction constitutes an aggravated felony for removal purposes, and Defendant's 2005 removal was not fundamentally unfair.

To determine whether a state law conviction is an aggravated felony, a court "looks to the statute under which the defendant was convicted and compares its elements to the relevant definition of an aggravated felony under federal law." *United States v. Valdavinos-Torres*, 704 F.3d 679, 686 (9th Cir. 2012) (citing *Taylor v. United States*, 495 U.S. 575 (1990)). "There is a categorical match only if the statute's elements are the same as, or narrower than, those of the generic [federal] offense." *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1147 (9th Cir. 2020) (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)) (internal quotation marks omitted). If the state statute is broader than the federal offense, then the court determines whether the statute is divisible or indivisible. *Id.* (citing *Medina-Lara v. Holder*, 771 F.3d 1106, 1112 (9th Cir. 2014)).

---

[2] The Government also argues Defendant did not satisfy the requirements of 8 U.S.C. § 1326(d) by exhausting his administrative remedies and demonstrating deprivation of the opportunity for judicial review. However, the Government concedes that this argument is currently foreclosed by *Ochoa* and raises the issue only to preserve it for further review. (ECF No. 55 at 14.) The Court does not and need not address the Government's arguments as to the first two prongs of *Ochoa* because, as will be discussed, Defendant fails to satisfy the third prong.

"An overbroad and indivisible statute does not constitute a generic crime." *Id.* "A state offense qualifies as a generic offense . . . if the full range of conduct covered by [the state statute] falls within the meaning of the generic offense." *Id.* (quoting *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1202 (9th Cir. 2014) (insertion retained)).

However, the Supreme Court has held, "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). It requires "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* A defendant can show "a realistic probability" that a state statute exceeds the generic definition in one of two ways: (1) by showing the state statute expressly defines a crime more broadly than the generic offense and the express text is not a logical impossibility; or (2) by identifying at least one case in which the state courts applied the statute in a situation that does not fit under the generic definition. *Lopez-Aguilar*, 948 F.3d at 1147 (internal quotation marks omitted).

In the instant case, it is undisputed that the California definition of methamphetamine appears facially broader than the federal definition. California Health & Safety Code § 11055(d)(2) regulates "[m]ethamphetamine, its salts, isomers, and salts of its isomers" as controlled substances. As for federal law, the Controlled Substances Act similarly regulates "methamphetamine, including its salts, isomers, and salts of isomers." *See* 21 U.S.C. § 812 Schedule II(c), Schedule III(a)(3). The distinction lies in the statutory definitions of "isomer." Federal law defines "isomer" as it relates to methamphetamine as an "optical isomer." 21 U.S.C. § 802(14). California's definition of "isomer," on the other hand, includes both "optical and geometrical (diastereometric) isomers." Cal. Health & Safety Code § 11033.

Based on this textual distinction, Defendant urges to the Court to follow the Ninth Circuit's reasoning in *Lorenzo v. Sessions*, 902 F.3d 930 (9th Cir. 2018) ("*Lorenzo I*"). In *Lorenzo I*, the Ninth Circuit held that a defendant's §§ 11378 and 11379(a) convictions were not a categorical match to controlled substance offenses under 8 U.S.C. § 1227(a)(2)(B)(i) because California law includes "geometric isomers" of methamphetamine and federal law does not. *See*

*Lorenzo I*, 902 F.3d at 932–35.  Absent evidence to the contrary, the *Lorenzo I* court assumed the distinction between the definitions was material and found the California definition to be overbroad.  *Id.* at 936 n.3.  Four months later, the Ninth Circuit withdrew *Lorenzo I* and superseded it with an unpublished memorandum clarifying that its ruling was "limited to the information in the administrative record" before it.  *See Lorenzo v. Whitaker*, 752 Fed. Appx. 482, 485 (9th Cir. Jan. 17, 2019) ("*Lorenzo II*").  Importantly, *Lorenzo II* reached the same result as *Lorenzo I*, but the *Lorenzo II* court expressly declined to address whether geometric isomers of methamphetamine exist because the government's argument on the issue was untimely.  The *Lorenzo II* court emphasized, "We do not foreclose the government from presenting its new argument or new evidence in another case."  *Id.* at 485.

Shortly thereafter, the government had an opportunity to raise the argument in another case, *United States v. Rodriguez-Gamboa*, 946 F.3d 548 (9th Cir. 2019).  At issue again in *Rodriguez-Gamboa* was "whether the definition of methamphetamine under California law is broader than the definition under corresponding federal law."  *Id.* at 549.  The parties agreed the California definition is facially broader because it includes geometric isomers of methamphetamine while the federal definition does not.  *Id.* at 549.  The defendant argued the textual distinction was sufficient to end the analysis.  *Id.*  The government argued the "apparent difference is illusory because there is no such thing as a geometric isomer of methamphetamine" and thus there is no "realistic probability [California] would apply its statutes to conduct not forbidden by federal law."  *Id.* at 549, 552.  The Ninth Circuit remanded to the district court to resolve the "factual issue of whether geometric isomers of methamphetamine exist."  *Id.* at 553

On February 24, 2020, the district court held an evidentiary hearing.  *United States v. Rodriguez-Gamboa*, No. CR 18-00379-ODW, 2020 WL 1873545, at * 2 (C.D. Cal. Apr. 15, 2020).  In its factual findings, the court explained that several experts in organic chemistry testified there are no "geometric," "geometrical," or "geometrical (diasteromeric) isomers" of methamphetamine and "the structure of the methamphetamine molecule makes geometric isomers of the molecule impossible."  *Id.* at *4.  The court concluded that although the state statute is facially broader than its federal counterpart, "according to the government and supported by the

government's experts, there is no realistic probability of punishment for possession of geometric isomers of methamphetamine under state law (or at all)." *Id.* at \*5.

Here, like in *Rodriguez-Gamboa*, the Government argues geometric isomers of methamphetamine do not exist. (ECF No. 55 at 10.) In support of its argument, the Government attached a transcript of the February 24, 2020 evidentiary hearing from *Rodriguez-Gamboa*. (ECF No. 55-6.) The Government also attached declarations from Dr. Thomas K. Schoch and Dr. Daniel Willenbring, which reveal the complexity of the subject matter. (ECF Nos. 55-4, 55-5.) The Court will summarize the declarations in turn.

Dr. Schoch has been an analytical and forensic chemist for the U.S. Customs and Border Protection since September 2003. (ECF No. 55-4 at 2.) He obtained an undergraduate degree in chemistry at the University of California at Davis and his doctorate in physical chemistry from Stanford University. (*Id.*) Following his doctoral work, he conducted post-doctoral research in organic, organometallic, and natural products chemistry. (*Id.*) He attached a copy of his curriculum vitae, which details his extensive education, training, research, and experience with chemistry and structure of various drugs. (*Id.*) According to Dr. Schoch, geometric isomers "are compounds in which rotation about a double bond is restricted" and methamphetamine "cannot have geometric isomers because the structure has no double bonds and has only one ring, which is aromatic." (ECF No. 55-4 at 3–4.) He explains that the bonds in an aromatic ring are actually halfway between double and single bonds. (*Id.*) He further explains the methamphetamine molecule has only one non-hydrogen atom attached to the ring, which makes geometric isomers impossible even if the ring was not aromatic. (*Id.*)

Dr. Daniel Willenbring is a Drug Science Specialist with the Drug Enforcement Administration. (ECF No. 55-5 at 2.) He received a dual undergraduate degree in chemistry and computer science from the University of St. Thomas and his doctorate in organic chemistry from the University of California at Davis. (*Id.*) He completed his post-doctoral fellowship at the University of Pittsburgh. (*Id.*) Dr. Willenbring indicates he has testified as an expert witness in federal court over 20 times, and the Court notes he was one of the three experts who testified in the *Rodriguez-Gamboa* case. (*Id.*) He also attached a copy of his curriculum vitae, which details

his extensive education, training, research, and experience in the field of chemistry and controlled substances. (*Id.* at 4–5.) Dr. Willenbring explains "geometric isomers exist when molecules have identical atomic organizations but different geometries around a rigid portion of the molecules, usually a double bond or a ring." (*Id.* at 3.) Based on his analysis of the chemical structure of methamphetamine, Dr. Willenbring concludes there are no geometric isomers of methamphetamine because "[m]ethamphetamine does not contain any chemical functionality or combination of chemical functionality that would permit a geometric isomer of methamphetamine." (*Id.*)

For his part, Defendant does not argue geometric isomers *do* exist, nor does Defendant provide any evidence to that effect.[3] It also bears mentioning that Defendant does not challenge the qualifications or opinions of Dr. Schoch or Dr. Willenbring. Instead, like the defendant in *Rodriguez-Gamboa*, Defendant contends the facial discrepancy between the statutes alone is enough to find California law is overbroad and his removal was invalid. (ECF No. 58 at 2.)

Curiously, Defendant rests his assertion entirely on the now-superseded *Lorenzo I* opinion. (ECF No. 58 at 2 ("To be clear, the defense maintains that the textual distinction between the California and federal statute is enough to prevail under the *Taylor* analysis, as it did in *Lorenzo I*.") In doing so, Defendant ignores that the superseding *Lorenzo II* decision — which was narrowly limited to the facts on the record before the Ninth Circuit at the time — expressly left the door open for the government to argue geometric isomers of methamphetamine are a "theoretical impossibility" in a future case. 752 Fed. App'x at 485. Defendant also ignores that the Ninth Circuit effectively rejected a similar argument in *Rodriguez-Gamboa*. Rather than

---

[3] Defendant requests an evidentiary hearing to cross-examine the Government's witnesses, but an evidentiary hearing is typically required only upon an offer of proof with "sufficient definiteness, clarity, and specificity" to establish controverted issues of fact. *United States v. Hoang*, 486 F.3d 1156, 1163 (9th Cir. 2007); *accord United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). Where a defendant merely asserts that a fact is disputed but fails to offer evidence supporting that assertion, no hearing is required. *See, e.g.*, *United States v. Ramirez-Garcia*, 269 F.3d 945, 947 (9th Cir. 2001); *Howell*, 231 F.3d at 620–21; *United States v. Hickok*, 481 F.2d 377, 379 (9th Cir. 1973). Because Defendant fails to provide evidence or an offer of proof that geometric isomers of methamphetamine exist, Court DENIES Defendant's request for an evidentiary hearing.

decide *Rodriguez-Gamboa* on the undisputed textual distinction alone, the Ninth Circuit remanded to determine whether geometric isomers of methamphetamine exist. 946 F.3d at 552–53. It would have been unnecessary to remand if the textual distinction was sufficient to find the California statute overbroad.

Despite Defendant's assertion, *Lorenzo I* did not replace the Supreme Court's decision in *Duenas-Alvarez* as the "law of the land." (ECF No. 58 at 4 ("*Duenas-Alvarez* was the law of the land for 10 years prior to the Ninth Circuit deciding *Lorenzo I*.") To the contrary, it appears the Ninth Circuit in *Lorenzo II* and *Rodriguez-Gamboa* left the door open for the Government to argue that there is no realistic probability that California "would apply its statute to conduct that falls outside the generic definition of a crime" because geometric isomers of methamphetamine do not exist. *Duenas-Alvarez*, 549 U.S. at 193; *see also Lopez-Aguilar*, 948 F.3d at 1147.

As mentioned, Defendant does not challenge any aspect of Dr. Schoch or Dr. Willenbring's declarations. Defendant instead challenges testimony from the *Rodriguez-Gamboa* evidentiary hearing. (ECF No. 58 at 2–3.) Defendant argues that one of the expert's testimony suggests the scientific definition of "geometric isomers" has changed since California enacted California Health & Safety Code § 11033 in 1985, and there is a possibility that geometric isomers as understood by the California legislature in 1985 encompassed more than the current federal definition. (*Id.* at 3.) Defendant fails to explain how that fact, if true, would offset the Government's considerable evidence that, as presently understood, geometric isomers of methamphetamine are an impossibility. In fact, Defendant apparently concedes the term "geometric isomers" was obsolete by 1996. (*Id.*) Whether or not the term "geometric isomers" has the same meaning now as it did in 1985, it is unclear to the Court how that fact is relevant to whether there is a realistic probability California would apply the statute too broadly today.

In sum, Defendant has not met his burden to show his 2005 removal was fundamentally unfair. *Raya-Vaca*, 771 F.3d at 1202. The sole basis for Defendant's fundamental unfairness argument is that the California definition of methamphetamine is overbroad because it includes geometric isomers. However, the *Rodriguez-Gamboa* court's recent findings, the Government's evidence, and Defendant's lack of evidence all lead to the conclusion that geometric isomers of

9

methamphetamine do not exist.  Based on the evidence and arguments before the Court, there is no realistic probability that California would apply its statute more broadly than the federal statute.  *See Duenas-Alvarez*, 549 U.S. at 193.  As such, the Court finds § 11379(a) is not overbroad, Defendant's § 11379(a) conviction constitutes an aggravated felony for removal purposes, and Defendant's 2005 removal was not fundamentally unfair.  Because Defendant has not met his burden of demonstrating a factual basis for his motion to dismiss, the Court DENIES Defendant's motion.  *See Ziskin*, 360 F.3d at 943.

**IV.    CONCLUSION**

For the reasons set forth above, the Court hereby DENIES Defendant's Motion to Dismiss the Indictment.  (ECF No. 52.)

IT IS SO ORDERED.

DATED:  May 12, 2020

Troy L. Nunley
United States District Judge